## PAMPANGA SUGAR MILLS v. TRINIDAD.

No. 325. Argued March 1, 1929.—Decided April 8, 1929.

Mr. *Louis Titus*, with whom *Messrs Quintin Paredes, Felipe Buencamino, Jr., Oscar Sutro,* and *José Yulo* were on the brief, for petitioner.

*Mr. Wm. Cattron Rigby,* with whom *Messrs Edward A. Kreger,* Judge Advocate General, U. S. A., and *Delfin Jaranilla,* Attorney General of the Philippine Islands, were on the brief, for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Pampanga Sugar Mills, the plaintiff below, was the owner and operator of a sugar mill in the Philippine Island. The business of the corporation consisted of milling sugar cane grown on lands owned and operated by others. The cane was delivered to the corporation by its owners under milling contracts which provided that the corporation should receive, as compensation for milling, one-half of the resulting centrifugal sugar, the other half going to the owners of the cane. The half received by the corporation was sold from time to time in the ordinary course of trade. Upon sales so made in 1920, 1921 and 1922 a tax was assessed as on merchants' sales under § 1459 and § 1460 of Act No. 2711 of the Philippine Legislature, known as the Administrative Code of 1917. Trinidad, the defendant below, was the then Collector of Internal Revenue of the Islands. The tax, which was one per cent on the sales value of the sugar so produced and sold by the corporation, amounted to 60,911.42 pesos.

The corporation claimed that its operations were not within the purview of the statute; paid the tax under protest; and then brought this suit in the Court of First Instance at Manila to recover the amount. The question presented was one solely of statutory construction. Is the corporation a merchant within the meaning of the law? The pertinent provisions of the statute are these:

" SEC. 1459. *Percentage tax on merchants' sales.*—All merchants not herein specifically exempted shall pay a tax of one per centum on the gross value in money of the commodities, goods, wares and merchandise sold, bar-

214

tered, exchanged, or consigned abroad by them, such tax
to be based on the actual selling price or value of the
things in question at the time they are disposed of or con-
signed, whether consisting of raw material or of manufac-
tured or partially manufactured products, and whether
of domestic or foreign origin. The tax upon things con-
signed abroad shall be refunded upon satisfactory
proof of the return thereof to the Philippine Islands
unsold. . . .

"'Merchant,' as here used, means a person engaged in
the sale, barter or exchange of personal property of what-
ever character. Except as specially provided, the term in-
cludes manufacturers who sell articles of their own
production, and commission merchants having establish-
ments of their own for the keeping and disposal of goods
of which sales or exchanges are effected, but does not
include merchandise brokers.

"§ 1460. *Sales not subject to merchants' tax.*—In com-
puting the tax above imposed, transactions in the follow-
ing commodities shall be excluded:

"(a) Things subject to a specific tax,

"(b) Agricultural products when sold by the producer
or owner of the land where grown, or by any other person
other than a merchant or commission merchant, whether
in their original state or not."

The trial court denied relief. Its judgment was
affirmed by the Supreme Court of the Islands under the
following circumstances. The case was argued three
times and was before the court for three years. Through-
out the period one judge was disqualified and the re-
maining eight were equally divided. Under § 138 of the
Philippine Administrative Code of 1917 the concurrence
of five judges is necessary for the pronouncement of a
judgment where there is no vacancy in the court; and
the amount in controversy exceeds 10,000 pesos. Thus,

in this case, the equal division of the appellate court did not operate as an affirmance of the judgment below. Finally, one of the four, who had been consistently of the opinion that the corporation was not subject to the tax, changed his vote and voted with the four who thought the tax had been collected legally. He wrote, at the time of doing so, an opinion in which he stated that he still adhered to his original belief and that he changed his vote solely in order to break the deadlock, and thereby enable the corporation to apply to this Court for a review. A writ of certiorari was granted. 278 U. S. 590. As the amount in controversy exceeds $25,000, there is jurisdiction under § 7 of the Act of February 13, 1925, 43 Stat. 936, 940. We are of opinion that the judgment should be affirmed.

The corporation manufactured and sold the sugar. Section 1459 declares that " except as specially provided, the term [merchants] includes manufacturers who sell articles of their own production." The exceptions are provided in § 1460, and the corporation is not relieved by either of them. The first is: " (a) Things subject to a specific tax." Sugar confessedly is not. The second exception is: " (b) Agricultural products when sold by the producer or owner of the land where grown, or by any other person other than a merchant or commission merchant, whether in their original state or not." Exception (b) affords no immunity to the corporation. Sugar cane is an " agricultural product " and the grower would doubtless have immunity on the sale of his half of the sugar made therefrom provided he sold it himself or through someone other than a merchant (including the manufacturer) or a commission merchant. But the corporation could, in no event, have immunity on the sale of its own half of the sugar; because it is a merchant within the express terms of § 1459—and its sugar is not within either

exception made by § 1460. Such would seem to be the natural reading of the statute. To overcome it several contentions are made.

*First.* It is contended that the sugar, although physically manufactured by the corporation, was legally manufactured by the grower, the corporation being merely a servant hired by the grower to perform the service; that therefore the corporation is not included in the class taxed of "manufacturers who sell articles of their own production"; and that the fact that the compensation was paid in sugar instead of in cash is immaterial. The corporation is in no sense a servant. It is an independent concern— a contractor. But even if it could be deemed a servant of the producer of the cane, this view would not aid the corporation. It is taxed not on sugar owned by the grower, but on sugar which it acquired and then sold on its own account. The nature of the transaction by which the corporation acquired the sugar is not of legal significance. The tax is solely on the sale. If the sugar be deemed to have been bought by the corporation and then sold, it was a merchant in the common acceptation of the term. If it is treated as a manufacturer of sugar for hire, it is liable under the express provision of the statute which declares that, for the purpose of the tax, the manufacturer shall be deemed a merchant.

*Second.* It is contended that the clause in § 1459 that "except as specially provided, the term [merchants] includes manufacturers who sell articles of their own production" does not mean to include all manufacturers who do so, but only those whose main business is selling what they buy. No basis is shown for imposing such a limitation upon the plain words of the statute; nor is it shown why this corporation is in respect to the sugar sold in any different position from one who manufactures sugar from cane bought for cash. A concern which sold only sugar which it had manufactured from cane which it bought for

cash would clearly be within the terms of the statute; and no reason is suggested why a concern which manufactures only sugar which it received in exchange for services—and thus acquired by barter—should not be. The corporation was as much engaged in the business of selling sugar as it was in the business of manufacturing it. If it had obtained the sugar by a purchase for cash, it would confessedly have been liable to the tax. If getting the sugar in exchange for the service performed in grinding the other half of the cane for the grower be deemed a barter, the corporation would under the terms of the statute likewise be liable.

*Third.* It is contended that even if the sales by the corporation would be taxable under § 1459, if that section stood alone, they are specifically exempted by § 1460, because sugar is an " agricultural product " and was sold by " the producer " within clause (b), which excludes from the tax " agricultural products when sold by the producer or owner of the land where grown, or by any other person other than a merchant or commission merchant, whether in their original state or not." Centrifugal sugar may well be considered an agricultural product, but he who produces it, is the agriculturist—the grower—not the manufacturer. That the word " producer " is used in § 1460 in this restrictive sense is made clear by the alternative exemption granted to the " owner of the land where grown." In *Allen* v. *Smith,* 173 U. S. 389, 399, this Court, while holding that under the particular statute before it there was no legal distinction made between " manufacturer " and " producer," observed that the latter term " is more commonly used to denote a person who raises agricultural crops and puts them in a condition for the market."

*Fourth.* It is contended that centrifugal sugar being an agricultural product, its sale is exempted from the tax by § 1460 unless made by " a merchant or commission merchant," and that § 1460, unlike § 1459, does not provide

that a manufacturer shall be deemed a merchant. There is nothing in § 1459 to suggest that the definition of merchant there given is only to obtain for that section. The two sections were parts of the same statute. They are not to be treated as unrelated enactments. In the absence of express restriction it may be assumed that a term is used throughout a statute in the same sense in which it is first defined. It is urged that if the legislature had intended the word to have the same meaning in both sections, it would not have added " commission merchant " in § 1460, as it had defined merchant as including commission merchant in § 1459. The fact that " commission merchant " is repeated in § 1460, does not show that the word " merchant " is used in the two sections with different meanings.

*Fifth.* Finally the corporation urges that if it be held liable under §§ 1459 and 1460 for these taxes, which were assessed and paid in 1920, 1921 and 1922, sugar centrals will hereafter be subject to double taxes; since in March, 1923, § 1462—an entirely different section of the Code which imposes a one per cent tax on the gross receipts of public utilities, hotels, restaurant keepers, dress-makers and others—was amended by inserting the words " sugar centrals." This argument is not persuasive as to the construction to be given to the Act of 1917. The amendment was enacted six years later than the Act here in question and six months after this action was begun.

*Affirmed.*