**BOWIE et al. v. GONZALEZ et al.**

No. 3590.

Circuit Court of Appeals, First Circuit.

Jan. 10, 1941.

E. T. Fiddler, of San Juan, P. R. (Bowie & Burke, of Baltimore, Md., Fiddler, McConnell & Gonzalez, of San Juan, P. R., Robert R. Bowie, of Baltimore, Md., and H. S. McConnell, of San Juan, P. R., on the brief), for appellants.

John J. Babe, of Washington, D. C. (A. Cecil Snyder, of San Juan, P. R., on the brief), for appellees.

Gerard D. Reilly, Irving J. Levy, John J. Babe, Robert S. Erdahl, David Persinger, and Milton C. Denbo, all of Washington, D. C., for amicus curiæ.

Before MAHONEY, Circuit Judge, and PETERS and FORD, District Judges.

MAHONEY, Circuit Judge.

This case is before the court on appeal from a declaratory judgment entered in the United States District Court for the District of Puerto Rico, in favor of the appellees, who are employees of the appellants. The latter are trustees of an express trust and are known collectively as Eastern Sugar Associates. It involves the application to certain phases of the sugar industry in Puerto Rico of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., and particularly Sections 3(f), 6(a), 7(c), and 13(a) (6), (10) thereof.

The findings of fact are not in dispute and may be summarized as follows:

The appellants are engaged in growing sugar cane on land owned or leased by them on the Island of Puerto Rico and the neighboring Island of Vieques. They own, maintain and operate sugar mills on the Island of Puerto Rico where cane, which they grow, is ground, and sugar and molasses extracted from it. These mills also grind the sugar cane of other farmers known as colonos, and as compensation for hauling the cane of the colonos and extracting the sugar therefrom, the appellants receive approximately 35 per cent of the raw centrifugal sugar produced from such cane. The appellants do not purchase sugar cane from any colonos, but all their operations, so far as the colonos' sugar cane is concerned, are on a toll basis. The other 65 per cent is either delivered to the colonos or is held in the appellants' warehouse and sold as and when directed by the farmer for his account. The appellants' sugar cane and that of the colonos is mixed, and no segregation takes place for the purpose of grinding. Between 33 and 40 per cent of all the sugars produced by the mills of the appellants is derived from the sugar cane of about 350 independent colonos. The remainder is from the cane produced by the appellants. Practically the entire income of the appellants is derived from the sale of sugar and molasses produced in their mills.

The appellants also own and operate a railroad line which serves the rather large area occupied by the appellants. The line connects the mills and extends to the Port of Humacao. It is used for hauling to the mills the sugar cane belonging both to the appellants and the colonos. After the sugar is ground, it is taken by the railroad to the Port of Humacao, where it is delivered to steamships for transportation to points outside of Puerto Rico, or it is stored in appellants' warehouse. Supplies for the use of the appellants are hauled from the port to the mills, but the railroad does not haul goods or merchandise for the public.

Sugar cane itself is not an article of commerce, as it is highly perishable and must be ground very soon after it is cut. Raw sugar is extracted from the cane by squeezing the juice from the cane by mechanical means. This removes impurities from the sugar, eliminates water, and reduces the pure juice crystals and separates the raw sugar from the molasses by centrifugal force. Raw sugar is the form in which the commodity moves in commerce, and molasses is a by-product.

The operation of the sugar mills is seasonal, and the crop or grinding season extends from some time in January or February to June. During the grinding season, cane is cut, hauled to the mills and ground. During this season the railroad and the mills are normally in full operation. The balance of the year is known as the dead season, and during this time repairs and replacements are made to the railroad, mills and other property of the appellants, and cultivation and planting are likewise attended to.

The appellees, the employees of the mills and transportation service of the appellants, contend that Section 6 of the Fair Labor Standards Act is applicable to them and that they are entitled to the minimum wage set up therein. The appellants maintain that they are exempt from both the wages and hours provisions of the Act on the ground that all of their employees are engaged in agriculture, and that even if not so exempt, the Adminis-

trator of the Act should so define the "area of production" as provided in Section 13(a) (10) as to include their sugar grinding activities and exempt them. The appellants further insist that the Act is unconstitutional in its entirety.

Because of this difference in position various labor difficulties have arisen between the appellees and appellants on the question of wages. An agreement was eventually reached whereby the difference in wages paid to the employees and those which would be required if the Act were applicable was deposited in a New York bank to be held in escrow pending the determination of the applicability of the Act. On February 9, 1939, the appellants filed this suit against three employees individually and as representative of the employees engaged in transportation and milling operations as a class. The bill asked for an injunction against the activities of their employees and a declaratory judgment stating that Congress intended to exempt such employees as are here involved from the minimum wage provisions of the Act.

 The bill included the proper allegations of irreparable damage and alleged that the decision of the Administrator that he had no authority to define an area of production for the sugar grinding industry was arbitrary and unreasonable. The appellees raised questions as to the jurisdiction of the court and suggested that no real controversy existed. However, the District Court found that under all the circumstances of the case it had jurisdiction because the Fair Labor Standards Act is one to regulate commerce among the states and that a justiciable controversy existed cognizable by the court within the Federal Declaratory Judgment Act, Jud.Code § 274d, 28 U.S.C.A. § 400. We believe that the District Court was right in so holding.

The appellees alleged in their answer that the appellants are engaged primarily in manufacturing sugar and only incidentally in agriculture, and that the minimum wage provisions of the Act in question are applicable to the employees here involved. The trial court upheld their contention that the appellees, employees engaged in the mills and transportation service, were not engaged in agriculture within the meaning of the Act, and that the sugar grinding industry was in no way exempt from the wage provisions of the

Act. The court further declared that the Act was a valid exercise of the power of Congress to regulate commerce. The judgment provided that the employees engaged in the mill operations of the appellants, or any necessary incident thereof, those engaged in transporting raw centrifugal sugar from the appellants' mills to points outside such mills, and in any necessary incident thereof, and those involved in transporting sugar cane for grinding at appellants' mills from points outside the mills at which they accept delivery of the sugar cane from the independent farmers for whom they grind sugar cane on a toll basis, or in any necessary incident thereof, were entitled to the minimum wages provided by the Act.

From this judgment this appeal was taken, and the appellants press the same arguments relied upon below. The Administrator of the Act has filed a brief as amicus curiæ, and requests the court to clarify the judgment given to include specifically employees engaged in transportation of molasses and those engaged in repair and maintenance work during the so-called dead season. He also requests that paragraph 2(c) of the judgment be corrected to read "all employees of complainants engaged in transporting sugar cane of independent growers for grinding at complainants' mills, or in any necessary incident thereof".

The broad questions before us are whether the Fair Labor Standards Act is constitutional and, if so, whether the appellees are entitled to its benefits. It is our opinion that both questions should be answered in the affirmative and that the decision of the District Court must be affirmed.

 The power of Congress to protect interstate commerce is extremely broad. It has been expressly held that any statutory rule designed "to prevent the flow of commerce from working harm to the people of the nation, is within the competence of Congress". Mulford v. Smith, 1939, 307 U.S. 38, 48, 59 S.Ct. 648, 652, 83 L.Ed. 1092. Sub-standard working conditions are a major cause of labor unrest with its consequent ill effect on interstate and foreign commerce, and we believe Congress has full power to correct by legislation these evils when affecting such commerce. That the appellants' employees here involved are engaged in such commerce is too clear for argument. The purpose and justification of the Act are very similar

to that of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. and the cases upholding the constitutionality of the latter are equally applicable here. See, e. g., Consolidated Edison Co. v. National Labor Relations Board, 1938, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126; Santa Cruz Packing Co. v. National Labor Relations Board, 1938, 303 U.S. 453, 463, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 38–40, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352.

The Fair Labor Standards Act has been upheld expressly in Opp Cotton Mills v. Administrator, 5 Cir., 1940, 111 F.2d 23, certiorari granted Oct. 14, 1940, 61 S.Ct. 46, 85 L.Ed. ——; cf. Fleming v. Hawkeye Pearl Button Co., 8 Cir., 1940, 113 F.2d 52 (semble). The reasoning of the court we believe to be sound. Several district courts have likewise ruled in favor of its constitutionality. See, e. g., Jacobs v. Peavy-Wilson Lumber Co., D.C.W.D.La.1940, 33 F.Supp. 206; United States v. Walters Lumber Co., D.C.S.D.Fla.1940, 32 F.Supp. 65; Andrews v. Montgomery Ward & Co., D.C.N.D.Ill.1939, 30 F.Supp. 380, affirmed, sub nom. Fleming v. Montgomery Ward & Co., 7 Cir., 1940, 114 F.2d 384, certiorari denied, Oct. 28, 1940, 61 S.Ct. 71, 85 L.Ed. ——. We are of the opinion that the Act is a proper exercise of the power to regulate commerce and is not a violation of the X Amendment to the Constitution of the United States.

■ ■ The purpose of the Act is to eliminate from industries engaged in commerce or in the production of goods for commerce the existence of labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers in such industries and production in order to prevent disruption of such commerce. Such unfavorable conditions are produced by low wages and long hours, and the Act is designed to cure those evils. The statute is remedial in nature and should be liberally construed. Fleming v. Hawkeye Pearl Button Co., supra; cf. Jeffery-De Witt Insulator Co. v. National Labor Relations Board, 4 Cir., 1937, 91 F.2d 134, certiorari denied, 1937, 302 U.S. 731, 58 S. Ct. 55, 82 L.Ed. 565.

■ ■ The scheme of the statute is broad and comprehensive with the obvious purpose of including all employees in interstate commerce except those specifically excepted. In the instant case, the appellants claim specific exemption from the wage provisions of the Act. Being a remedial statute, the appellants must bring themselves within both the letter and spirit of the exceptions since they are subject to a strict construction. Fleming v. Hawkeye Pearl Button Co., supra; cf. Morris Canal Co. v. Baird, 1915, 239 U.S. 126, 36 S.Ct. 28, 60 L.Ed. 177; Citizens' Bank v. Parker, 1904, 192 U.S. 73, 85, 24 S.Ct. 181, 48 L.Ed. 346.

It may be well to summarize briefly the provisions of the statute with which we are most closely concerned. The heart of the Act is found in Sections 6 and 7, which set up minimum wages and maximum hours for all employees engaged in commerce. There are no exemptions provided for in these sections except those specifically mentioned in Section 7(c).[1] This section allows an exemption from the hours provisions of the statute in the case of certain processing specifically mentioned, among which is the processing of sugar cane into sugar. The Administrator and the appellees concede that this section exempts the appellants from the hours provision of the Act, and no question is raised thereto. Section 13(a) makes provision for certain carefully defined exemptions from both Sections 6 and 7. Section 13(a) (6)[2] exempts any employee employed in agriculture, and the meaning of the word "agriculture" as used in the Act is defined in

[1] "Section 7 [§ 207]. * * * (c) In the case of an employer engaged in the first processing of milk, whey, skimmed milk, or cream into dairy products, or in the ginning and compressing of cotton, or in the processing of cottonseed, or in the processing of sugar beets, sugar beet molasses, sugarcane, or maple sap, into sugar (but not refined sugar) or into syrup, the provisions of subsection (a) [maximum hours] shall not apply to his employees in any place of employment where he is so engaged; * * *."

[2] "Section 13 [§ 213]. (a) The provisions of sections 6 [206] and 7 [207] shall not apply with respect to * * * (6) any employee employed in agriculture; * * *."

Section 3(f).[3] Section 13(a) (10)[4] exempts certain processors from both the hours and wages provisions of the statute when employed within the area of production as defined by the Administrator. It is significant to note that the exemptions in Section 13(a) are exemptions from both Sections 6 and 7, while the exemption in Section 7(c) only refers to the provision for maximum hours.

The appellants contend that their employees engaged in the production and transportation of raw sugar are engaged in "agriculture" within the meaning of Section 13 (a) (6) and Section 3 (f) and are thus entirely exempt from the Act. It is agreed by both parties that those employees engaged in the production and harvesting of sugar cane are clearly engaged in agriculture. The only dispute involves those employees engaged in the mills and the transportation facilities. It is our opinion that the latter are not engaged in "agriculture" as defined in the statute.

The argument of the appellants is primarily based upon the language in Section 3(f) including in the term "agriculture" the "production, cultivation, growing, and harvesting of any agricultural or horticultural commodities", and special reliance is placed upon the use of the word "production". However, the word "production" is used in conjunction with the words "cultivation, growing, and harvesting" and its natural and unstrained meaning would seem to refer to what is derived and produced from the soil, such as any farm produce. The grinding and processing operation through which the sugar cane goes results in the production of raw sugar. Such an operation is similar to the milling of wheat into flour and the

making of cider from apples. These operations are clearly the processing of agricultural products and not the production of them. That this was the understanding of Congress is made abundantly clear by the discussions relative to the bill prior to enactment. See 81 Cong.Rec. 7877–7878. Though Sancho v. Bowie, 1 Cir., 1937, 93 F.2d 323, held that raw sugar was an agricultural product within the meaning of the revenue act there in question, we do not consider that to be controlling in the instant case, particularly since the act expressly provided that the term "agricultural product" should include sugar.

The most convincing argument that the processing of sugar cane into sugar was not included within the term "agriculture" is found in the provisions of Section 7(c). All the sections relating to exemptions are in pari materia and must be construed together to form a consistent whole, if possible. Section 7(c) exempts from the hours provisions of the Act the processing of sugar cane into sugar. If such processing is included within the term "agriculture" it would be entirely exempt from the Act and the specific inclusion of such processing in the exemptive provision of Section 7(c) would be unnecessary. But the construction of the word "production" in Section 3(f) to mean agricultural production is entirely consistent with Section 7(c), which provides specific exemptions for certain detailed processing of agricultural commodities.

Another factor in our decision is the inclusion in Section 3(f) of commodities defined as agricultural commodities in Section 15(g)[5] of the Agricultural Marketing Act, 46 Stat. 1550, 12 U.S.C.A. § 1141j (g).

---

[3] "Section 3 [§ 203]. * * * (f) 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 15 [1141j] (g) of the Agricultural Marketing Act [Title 12] as amended), * * * and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

[4] "Section 13 [§ 213]. (a) The provisions of sections 6 [206] and 7 [207] shall not apply with respect to * * * (10) to any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, ginning, compressing, pasteurizing, drying, preparing in their raw or natural state, or canning of agricultural or horticultural commodities for market, or in making cheese or butter or other dairy products."

[5] "Section 15 [§ 1141j]. * * * (g). As used in this subchapter, the term 'agricultural commodity' includes, in addition to other agricultural commodities, crude gum (oleoresin) from a living tree, and the following products as processed

The said Section 15(g) provides that the term "agricultural commodity" includes crude gum from a living tree, and certain specified products as processed by the original producer of the crude gum, such as turpentine and resin. It seems apparent to us that the inclusion of this Section 15 (g) in Section 3(f) of the Act here in question is recognition of the fact that such operations as the production of turpentine from oleoresin, or of raw sugar from sugar cane, would not be included in the definition of agriculture unless specifically included. There is no specific inclusion for the processing of sugar cane into sugar in Section 3(f) as there is in Section 7(c). It is apparent from the specific inclusion of this processing in Section 7(c) that Congress was cognizant of it and included it in certain exemptions where it was thought desirable.

The appellants further rely on other language in Section 3(f) which includes in the term "agriculture" "any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market". It is apparent from the wording of this language that the practices must be performed by the farmer as an incident to *such* farming operation. Clearly the processing of the colonos' sugar cane, which comprises a sizeable percentage of the appellants' total processing, is not performed as an incident to the farming operations of the appellants. The processing of the colonos' sugar cane is incident to or in conjunction with the milling operations of the appellants and has no connection with their farming activities. The legislative history here also makes it plain that this language was particularly included to make certain that independent contractors such as threshers of wheat, who travel around from farm to farm to assist farmers in what is recognized as a purely agricultural task, should be included within the definition of agricultural employees, and also to assist a farmer in getting his agricultural goods to market in their raw or natural state. See 81 Cong. Rec. 7876, 7888. We think it clear that the grinding of sugar cane for the colonos is not incidental to the appellants' own farming operations. The United States Supreme Court has held

in such cases that the appellants would be independent contractors. Pampanga Mills v. Trinidad, 1929, 279 U.S. 211, 216, 49 S. Ct. 308, 73 L.Ed. 665.

Furthermore, it would seem that the employees involved in this case would not fall within the reason for the exemption which was accorded to agricultural employees. The Act was drawn not to include the latter because agricultural labor was not subject to the usual evils of sweatshop conditions of long hours indoors at low wages. Also any attempt to regulate agricultural wages would present a difficult problem since a substantial part of the agricultural workers' income must of necessity be for board and room. The employees in the instant case are typical factory workers or laborers engaged in maintaining industrial facilities. The exemption of agricultural labor from the operation of the Act is not admissible as an argument to exempt labor in an industry from its operation. Fleming v. Hawkeye Pearl Button Co., supra; cf. North Whittier Heights Citrus Ass'n v. National Labor Relations Board, 9 Cir., 1940, 109 F.2d 76, 80, 81. For these reasons we reject the appellants' contention that the employees here involved are engaged in agriculture within the meaning of Section 13(a) (6) and Section 3(f).

The appellants further maintain that the wages and hours provisions of the Act shall not apply to the employees here in question by virtue of Section 13(a) (10) which sets up an exemption from the Act for any employees employed within the area of production engaged in certain processing of agricultural commodities, including preparing them in their raw or natural state for market. The appellants claim that their milling activities are within an area of production and that they are engaged in preparing an agricultural commodity for market. They complain that the Administrator has refused to define an area of production for the processing of sugar cane and that he is required to do so by Section 13(a) (10). We cannot agree with the appellants. In the first place, Section 7(c) exempts only from the hours provisions of the statute the processing specially mentioned therein wherever it is done. This processing includes the ginning of cotton and the processing of sugar cane into sugar. Section 13(a) (10)

---

by the original producer of the crude gum (oleoresin) from which derived:

Gum spirits of turpentine, and gum rosin, as defined in section 92 of Title 7."

exempts entirely from the Act certain detailed processes only if conducted within the area of production. Cotton ginning is also expressly included in Section 13(a) (10), but there is no mention of the processing of sugar cane into sugar. We deem that factor to be extremely significant. It seems clear to us that the specific inclusion of the processing of ginning in both Section 7(c) and Section 13(a) (10) indicates a policy on the part of Congress to include specifically in both of these sections those processes which it desired to exempt from the Act. The presence of a specific exemption for the processing of sugar cane in Section 7(c) and its absence in Section 13(a) (10) seem clearly to indicate a desire on the part of Congress to exempt such processing only from the hours provision of the statute and not to provide an exemption from both hours and wages, even if carried on in the area of production.

The appellants' argument seems entirely to disregard the wording of Section 13(a) (10) requiring the agricultural commodities involved to be in their "raw or natural state". Referring again to the Congressional debates, it is plain that a process such as the one here involved was not meant to be included. The production of raw sugar is not the preparation of an agricultural commodity in its "raw or natural state". It is similar to extracting cider from apples, which was said to be a processing operation and not intended by Congress to be within the provisions of Section 13(a) (10). See 81 Cong. Rec. 7877–7878.[6] It appears quite obvious that Section 13(a) (10) excludes from the Act

certain operations not excluded by Section 13(a) (6). If not, there would be no necessity for Section 13(a) (10). Therefore it exempts not agricultural production but certain processes which are specifically mentioned and among which the processing of sugar cane into sugar is not found. It cannot be important that sugar processing is similar to those operations included in Section 13(a) (10) as Section 7 (c) is ample evidence of the fact that Congress had sugar processing in mind and knew how to include it when it so desired. Under these circumstances there was clearly no right or duty in the Administrator to define an area of production for the processing of sugar cane into sugar, and it is our opinion that the appellants' claims for an exemption under this section are unjustified.

It is our conclusion that Section 6 of the Fair Labor Standards Act applies to the employees here in question and that they are entitled to the minimum wages provided in the statute. Among the appellants' employees only those engaged in planting, cultivating and harvesting of the sugar cane are exempt. It is further clear that those employees engaged in the transportation of molasses from appellants' mills should be included in paragraph 2(b) of the declaratory judgment. The Administrator contends that all the appellants' employees who assist in the delivery of the colonos' cane to the appellants' mills, should be included in the category of those entitled to the benefits of the Act. While it appears to us that the judgment of the District Judge is broad enough to include them, we can find no

---

[6] "Mr. Barkley. I suppose that any establishment dealing with apples as they come from the orchard is dealing with them in their raw state.

"Mr. Schwellenbach. That is correct.

"Mr. Barkley. There are many things which may be made from apples—for instance, applesauce, which I presume is not included within the regulations of the bill. But if we provide for the exemption of plants which are dealing with apples as a raw material, we include practically all plants which deal with apples, because they deal with them only as raw materials. Is that true?

"Mr. Schwellenbach. No; I think the Senator is incorrect in that suggestion. The exemption applies when they deal with them in their raw or natural state.

If they start making cider out of them, or start making applesauce out of them, then they are processing and not dealing with them in their raw or natural state.

"Mr. Barkley. They are dealing with the apple in its raw state.

"Mr. Schwellenbach. Not after they put it through the first grinder. It then ceases to be in the raw or natural state.

"Mr. Barkley. Somewhere between the apple and the cider this proposed law will take effect.

"Mr. Schwellenbach. I do not think there would be any difficulty as to a construction of that kind, because once it gets to the point which the Senator from Kentucky describes, then it becomes processing, and there is no inclusion of processing in the amendment."

objection to ordering their specific inclusion in paragraph 2(c), which should be modified to read as follows: "All employees of complainants engaged in transporting sugar cane of independent growers for grinding at complainants' mills, or in any necessary incident thereof". Moreover, an addition to the judgment should be made specifically including the employees who, in the dead season, are engaged in the repair and maintenance of the milling and transportation facilities of the appellants.

The judgment of the District Court, as modified by this opinion, is affirmed.