**DURKIN, Secretary of Labor,**

v.

**STINSON.**

Civ. A. No. 738.

United States District Court
D. Maine, N. D.
Feb. 25, 1954.

≈1222

Albert H. Ross, Boston, Mass., for plaintiff.

Herbert T. Silsby, II, Ellsworth, Maine, for defendant.

CLIFFORD, District Judge.

This is an action brought by the Secretary of Labor under Section 17 of the Fair Labor Standards Act of 1938, as amended, Title 29 U.S.C.A. § 217, for a judgment enjoining the defendant from violating the minimum wage, maximum hour, record keeping and shipping provisions of the Act.

The case involves the application of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to certain employees of the defendant who are engaged in the production of canned sardine products for shipment in interstate commerce. The plaintiff alleges that the defendant has failed to pay many of his employees the minimum wage and maximum hour benefits as required by the Act; has failed to keep records in accordance with the requirements of the Act; and has shipped goods in interstate commerce which were produced in violation of the Act's minimum wage and maximum hour provisions.

The defendant admits the jurisdiction of this Court; that he was and is the owner and operator of the two sardine canning plants named in the complaint; and that he and all of his employees are engaged in interstate commerce or in the production of goods for interstate commerce. The defendant also admits that the Administrator of the Wage and Hour Division has authority to issue record keeping regulations under the Act.

The Fair Labor Standards Act provides by section 206(a) (1) that:

"Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—(1) not less than 75 cents an hour; * * *."

Section 207 provides that employees of the kind therein mentioned, shall not be employed for a work week longer than forty hours without payment of a rate not less than one and a half times the regular rate at which he is employed. These provisions are, however, subject to certain exemptions spelled out in the Act. We are primarily concerned with the exempting sections of the Act, and the application of the facts to the language contained in said sections.

The parent exemption is section 13(a) (5) and prior to the 1949 amendment, it read as follows:

"The provisions of section 206 [minimum wages] and 207 (maximum hours] of this title shall not apply with respect to * * * (5) any employee employed in the catching, taking, harvesting, cultivating, or farming of any kind of fish, shellfish, crustacea, sponges, seaweeds, or other aquatic forms of animal and vegetable life, including the going to and returning from work and including employment in the loading, unloading, or packing of such products for shipment or in propagating, processing, marketing, freezing, canning, curing, storing, or distributing the above products or byproducts thereof; * * *."

By the amendment, the term "processing" as contained in section 13(a) (5) was modified by the parenthetical phrase "other than canning", and the canning exemptions originally in section 13(a) (5) was transferred to section 13(b) (4). That section reads as follows:

"The provisions of section 207 of this title shall not apply with respect to * * * (4) any employee employed in the canning of any kind of fish, shell-fish, or other aquatic forms of animal or vegetable life, or and byproduct thereof; * * *."

It is apparent that it was the intention of Congress to grant to those employees employed in the canning of fish the full benefit of the minimum wage provisions of the Act, which, under section 13(a) (5) had previously been denied them. To this extent, section 13(b) (4) can be considered as a remedial statute. Its terms of coverage should, therefore, be liberally rather than narrowly construed. Tobin v. Blue Channel Corp., 4 Cir., 198 F.2d 245.

It therefore becomes necessary to ascertain the test which should be applied in determining those employees who are within this exemption and thus entitled to the minimum wage provisions of the Act.

The plaintiff's position in this respect has been somewhat confusing and conflicting. He seems to take three different positions: (1) that Section 13(b) (4) applies only to those employees who are exclusively engaged in the physical act of canning; (2) that the application of the 13(b) (4) exemption is to be confined to those employees whose operations are actually performed on the product; and (3) that, according to the official interpretation of Section 13(a) (5), made at a time when canning was a part of said section, the applicability of the exemption is to be tested by the functional relationship of an employee's occupation to the activities mentioned in Section 13(a) (5), rather than the engagement by the employee in the specific physical operations which the terms used in that section may describe.

On the other hand, the employer, who is the defendant herein, contends that it was the intention of Congress in adopting the 1949 amendment to exempt the fish canning industry as a whole rather than any particular activity in which his employees might be engaged; that this is so because all of his employees cannot be subject to regular hours of employment due to the highly perishable nature of the product and the assembly-like manner in which the fish are canned; that all of his employees herein considered are an integral part of the canning process with each group of his employees being interrelated and interdependent upon each other; and that because he is engaged exclusively in the canning of fish, all of his employees are entitled to the minimum wage provisions of the Act, but are exempted from the hourly provisions of said Act.

To support his contention in this regard, the employer cites McComb v. Consolidated Fisheries Co., 3 Cir., 174 F.2d 74, a case which holds that Section 13 (a) (5) exempts all employees in the fishing industry if, in fact, their services are necessary to the conduct of the

operations enumerated in said section. Considering the facts as stated in the McComb case, this Court is fully in accord with that opinion. However, not only are the facts in the instant case different from those of the McComb case, but also Section 13(b) (4) exempts employees in canning, which exemption, prior to 1949, was merely one of the many contained in Section 13(a) (5).

In that case it was entirely proper to classify watchmen as within the *processing* exemption, and the office employee as within the *distributing* exemption under the provisions of Section 13(a) (5). However, the defendant in the case at bar has restricted the issue to a consideration of his contention that all of his employees are employed in "canning", and, at no time has he asserted that any of these employees should be classified within those activities enumerated and catalogued under the provisions of Section 13(a) (5). Therefore, the decision in the McComb case is not in point, it having been based upon a consideration of a different situation than that with which this Court is now concerned.

The plaintiff relies heavily upon the decision of the United States Supreme Court in Farmers Reservoir & Irrigation Company v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672, in support of his contention that an exemption is to be confined to employees in the occupations or operations enumerated in the Act, and does not extend to other employees doing other work necessary to those occupations or operations. However, the facts in that case are entirely different and the problem with which the Supreme Court was there confronted is not analogous to the problem with which we are here concerned. In that case, the work of the employees in the company was not done either on the farm or by the farmer. They were not employed by farmers. They were hired by an organization not engaged in a farm operation, which organization paid them, controlled and directed them, and could fire them. The controlling factor in that case was that the company had been set up by farmers as an independent entity to operate an integrated unitary system. The function of supplying water had thus been divorced from the farming operation by the farmers and set up as a separate and self-contained activity in which the farmers were forbidden to interfere, by the corporation's by-laws. It is the opinion of this Court that the decision in that case has no bearing on the questions involved in the instant case.

By the terms of the Act, Section 13 (b) (4) is limited to those employees who are employed in canning. Canning has been defined to mean "hermetically sealing and sterilizing or pasteurizing and has reference to a process involving the performance of such operations. It also means other operations performed in connection therewith such as necessary preparatory operations performed on the products before they are placed in bottles, cans, or other containers to be hermetically sealed, as well as the actual placing of commodities in such containers. Also included are subsequent operations such as the labeling of the cans or other containers and the placing of the sealed containers in cases or boxes whether such subsequent operations are performed as a part of an uninterrupted or interrupted process." House Report No. 1453, 81st Congress, 1st Session, dated October 17, 1949.

In view of this definition, this Court is of the opinion that there is no basis for restricting the application of the exemptions only to those engaged in the physical act of canning as asserted by the plaintiff, nor is there any basis for including within the exemptions all of the employees of the defendant whose services are nonetheless necessary to the operation of his plant.

In construing the provisions of the Act, due consideration must be given to the official interpretation of the Act as made by the Administrator of the Wage and Hour Division. The rulings, interpretations and opinions of the Administrator, while not controlling upon the Court by reason of their authority, do constitute a body of experience and

information to which Courts and litigants may properly resort for guidance. Skidmore v. Swift & Company, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. And because canning was once a part of section 13(a) (5), any interpretation of "canning" as contained in said section is clearly applicable to this situation now before this Court. Furthermore, all of the sections relating to the exemptions are in pari materia and must be construed together to form a consistent whole if possible. Bowie v. Gonzalez, 1 Cir., 117 F.2d 11.

A revised interpretation of the exemption provided by section 13(a) (5) of the Fair Labor Standards Act was released by the Administrator on March 29, 1945. He stated:

"In general the applicability of the exemption is to be tested by the functional relationship of an employee's *occupation* to the activities mentioned in section 13(a) (5) rather than the engagement by the employee in the *specific physical operations* which the terms used in that section may describe." *Release A–15*, dated March 29, 1945 of the U. S. Department of Labor, Wage and Hour and Public Contracts Divisions. (Emphasis theirs.)

Applying this general principle to the canning exemption the administrator states in the same release:

"Under the general principles stated above if the occupation of an employee employed in connection with the canning of fish, for example, is functionally so directly and closely related to the movement of the perishable product to a non-perishable state that the occupation may be said to be essential to such movement, it will be deemed to be an integral part of such movement and of the canning of fish carried on in the establishment and will, for the purposes of the exemption, be considered an exempt canning occupation. Firemen engaged exclusively in providing steam for the processing kettles would thus be within the

exemption, but night watchmen, whose work is not a part of the processing activity, would not."

■ Considering all of the factors hereinbefore stated and adopting the general principle as applied in the Administrator's illustration with reference to the canning exemption, this Court is of the opinion that all of those employees who are so directly and closely related to the movement of a product from a perishable to a non-perishable state that their work may be said to be essential to such movement, come within the scope of section 13(b) (4). Included within this general test would be those employees who perform necessary operations upon the product itself. The basic issue, therefore, is whether the employees herein considered come within the exemption of Section 13(b) (4) as determined by the test stated herein. This determination depends upon the facts.

The parties are substantially in accord as to the facts of this case. The defendant is engaged exclusively in the canning, selling, and distribution of sardines. His two canning plants and facilities are located in Hancock County, Maine, and consist of fishing boats to catch the sardines, dock facilities, pumping equipment to pump sardines from the boats into the plants, canning or cooking rooms, cooking facilities, storage facilities, trucks and buses. The plants are designed especially for the canning of sardines on an assembly-line basis, whereby the sardines upon reaching the packing room are moved through a continuous series of preparatory operations which result in the end product—the canned sardines.

The defendant employs approximately 280 employees during the canning season, which lasts from May to November. The rest of the year is known as the dead season. All of his employees are employed in the area of production—where the canning operations are performed. The very nature of the product demands that it be processed within a short period of time after being caught. Sardines are subject to rapid spoilage and

the defendant alleges, and it is undenied by the plaintiff, that he has no refrigeration facilities whereby the fish can be safely kept and thereby allow the canning to be done on an eight-hour day basis. Any delay, therefore, in the canning operation could very well result in a substantial loss to the defendant.

Furthermore, the business is subject to the whims of nature—the tide, weather, and the run of fish. When the run is heavy it is reasonable to conclude that most of the employees would be required to work long and irregular hours in order to preserve the product.

The employees considered herein may be divided into five general groups: (1) packers, (2) bus drivers, (3) watchmen-firemen, (4) laborers, and (5) office employee. The facts with respect to each of these groups were stipulated by the parties, and, considered in order, are as follows:

*Packers*—These employees are engaged exclusively in the canning of sardines. They cut the head and tail off the fish and place the finished product in the can, which is subsequently hermetically sealed, labeled, and packed in wooden cases. These employees receive a designated sum such as 45¢ for each case of sardines packed during the 1951 and 1952 canning season. No make-up pay or additional compensation has been received by these employees and the various packers regularly earned less than 75¢ an hour during that season. No records were maintained of their hours of work during the season and the employees normally worked approximately fifty hours in a work week.

*Bus drivers*—Many of the employees live substantial distances from the plants. Due to the absence of public transportation, the defendant operates his own buses to take his employees to and from work. During the canning season all of the drivers spend at least two and one-half hours a day driving the buses, the actual driving time ranging from 2½ to 4 hours a day, five to six days a week. These buses are operated by the defendant exclusively for the benefit of his employees. Upon arrival at the plant, the drivers then perform production therein until the completion of the shift whereupon they drive the other employees back to their homes. It is admitted that each of the employees in this group spends more than 20% of his time driving employees to and from the defendant's plants. These employees regularly work in excess of forty hours a week and receive only their straight time hourly earnings.

*Laborers*—During the canning season, their duties consist of bailing the fish from one bin to another, placing the fish in the cooking and drying room, transporting the fish from the drying room to the conveyor belt, to supply the packers, and supplying other conveyor belts with cans. They transport packed cans to the sealing machine by small push carts, and also pack the sealed cans into cases for shipment. The laborers also perform general maintenance work on both the building and plant equipment.

During the dead season they do general maintenance work getting the plant ready for the canning season. They fix floors, repair the conveyor equipment in the plant and perform general maintenance work in the plant.

*Watchmen-Firemen*—The employees in this category perform a combination of duties. They regularly work a twelve-hour day, seven days a week, or a total of eighty-four hours. They usually alternate their work—that is, during one work week they work the night shift from 6:00 P.M. to 6:00 A.M., and the following week they work from 6:00 A.M. to 6:00 P.M.

During the day shift their only duties are those of a fireman. In this capacity they tend fires and furnish steam which is used both for cooking the fish and, when the weather demands, heating the plant. All of these employees are paid only for straight-time hourly earnings and receive no premium for the hours worked in excess of 40 hours a week during either the canning or dead season.

When the watchmen-firemen worked on the night shift they spent their time in

making their rounds and patrolling the outside of the plant. Their duties consisted of safeguarding the plant from fires, intrusions, and perils of the night.

The watchmen-firemen also fired the boilers which supplied heat to the plant and which processed fish. The same boilers are used to supply heat to the plant and to cook and process the fish products.

*Office Employee*—This employee maintains the employment, social security, payroll, and other records. She makes out bills of lading for shipments in interstate commerce, records the packing tickets and time cards on the payroll books, and makes the payroll for all employees. She normally works a forty-four hour work week and receives therefor a flat salary of $40.

With respect to the various groups of employees involved herein, the plaintiff contends that a distinction should be drawn between the canning and dead season; that because no canning operations are involved during the dead season, all employees employed during the said season should be entitled to the benefits of both the wage and hourly provisions of the Act; that the only employees covered by Section 13(b) (4) are the packers, laborers and firemen; that all of the other workers are not within the section 13(b) (4) exemption, and, therefore, are entitled to the benefits of the wage and hourly provisions of the Act; that although some of the employees are admittedly covered by Section 13(b) (4) as to part of their duties, they perform both exempt and non-exempt work and because these duties were commingled without proper segregation, said employees should be allowed the benefits of the wage and hourly provisions of the Act.

The defendant, on the other hand, contends that all of his employees are within the scope of Section 13(b) (4) regardless of whether they are employed during the canning or dead seasons.

▆ After full consideration of these contentions, it is the opinion of this Court that those employees whose operations and duties are confined to work during the so-called dead season, when canning operations are at a standstill, are not within the scope of the canning exemption. Therefore, having in mind the contentions of the plaintiff and the issue as restricted by the defendant, all of those employees who work during the dead season are entitled to the benefits of both Sections 206 and 207—that is, the wage and hourly provisions of the Act.

▆ Considering next those employees who work during the canning season, it is clear from the facts of this case that the watchmen, as such, and the office employee do not perform any work that may be considered as part of the canning activities. Their services, in the opinion of this Court, are not directly and closely related to the movement of the product from a perishable to a non-perishable state. These employees, therefore, are likewise entitled to the benefits of both the wage and hourly provisions of the Act.

▆ As for the packers and firemen, as such, and laborers, the plaintiff admits in his arguments and briefs that they are covered by Section 13(b) (4), provided their work is properly segregated. Insofar as the packers and laborers are concerned, this Court is of the opinion that all of their work during the canning season is exempt. There is no need for segregation. Therefore, these workers are entitled only to the benefits of the minimum wage provisions of the Act. They are not entitled to the benefits of the hourly provisions of the Act. The situation, however, relating to the firemen is somewhat complicated and requires further consideration. During the night shift their work is commingled by serving as both firemen and watchmen. In view of the decision of this Court concerning the watchmen, their work should be segregated and there is no evidence that this was done. Where an employee engages in exempt and non-exempt activities during the same work week, the exemption is defeated if the non-exempt activities consume more than 20% of the hours in the work week. Re-

lease A–15, March 29, 1945. See also Walling v. Connecticut Company, 2 Cir., 154 F.2d 552. Since the burden to establish the exemption is upon the defendant, which he has failed to sustain, this Court rules that the firemen, who also act as watchmen on the night shift, are entitled to the benefits of both the wage and hourly provisions of the Act. It should be emphasized for the purpose of clarity that the firemen who work on the day shift are exempted under Section 13 (b) (4), as already indicated.

Sharp issue is taken as to the status of the bus drivers. The Court is of the opinion that these workers are within the scope of Section 13 (b) (4). It is imperative, under the facts and circumstances herein stated, that help be available immediately and at irregular hours to can the sardines when they are brought in by boats. There can neither be a delay in starting the processing of the sardines, nor can the assembly-line process be left uncompleted once it is begun. Considering that the employees live substantial distances from the plant and that there is no public transportation, the defendant, to insure the availability of a sufficient number of employees to perform this work, provides buses for their transportation. This service, to a large extent, eliminates a risk in an already risky business and, in the opinion of this Court, the work of the bus driver is so directly and closely related to the movement of the perishable product to a nonperishable state that they are essential to such movement. They are, therefore, entitled to the minimum wage provisions of the Act, but not to the hourly provisions.

From the agreed statement of facts and the oral and written arguments considered by this Court, it is plainly evident that most of the violations asserted to exist by the plaintiff are clearly unrefuted, long-continuing and widespread. The need for the issuance of an injunction is warranted. The violations, so far as they affect the employees herein listed, continued throughout the two-year period covered by the investigation and were in existence even at the time of trial. There can be no doubt that many of these employees, although subject to Section 13(b) (4), did not receive the minimum hourly wage of 75¢ per hour. Insofar as the minimum wage requirements are concerned, there is no possible excuse for non-compliance. Congress has made it plain that it is aware of the necessity of paying employees engaged in the canning of fish at least a minimum wage of 75¢ an hour. It sought to protect these marginal employees through its specific revision of the original Section 13(a) (5) exemption.

The defendant has been engaged in these activities for many years and has been investigated on different occasions and admittedly had been thoroughly apprised of the Department's position after each investigation. Moreover, after the 1949 amendment, he displayed an acute awareness of the necessity for paying these employees the minimum wage and sought to obtain a sub-minimum permit for them. He does not deny that he was thoroughly briefed with regard to the requirements for Learners' certificates and the necessity for paying the minimum in the absence of such certificates.

Despite this knowledge, he completely disregarded the minimum wage, record-keeping and shipment provisions of the Act, and paid his employees in disregard of the Act. No record of work hours was maintained for these employees and the employees received no make-up pay even though their earnings fell below the 75¢ an hour level.

Such conduct, in view of the defendant's knowledge of the Act, indicates that compliance can be achieved only through the medium of an injunction. The record is barren of any mitigating circumstances or factors explaining the failure of the defendant to take adequate measures to prevent violations in the future.

It is therefore ordered, adjudged, and decreed that the defendant, his agents, servants, employees, attorneys and all persons acting or claiming to act in his

behalf or interest be and hereby are permanently enjoined from violating the provisions of Section 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act.