James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

Troy Lee HUNT, d/b/a Gatesville Commission Company, Appellee.

No. 17456.

United States Court of Appeals Fifth Circuit.

March 5, 1959.

Bessie Margolin, Assistant Solicitor, D. of L., Washington, D. C., Earl Street, Regional Attorney, D. of L., Dallas, Tex., Stuart Rothman, Solicitor, Sylvia S. Ellison, Albert M. Horn, Attorneys, United States Department of Labor, Washington, D. C., for appellant.

Peeler Williams, Jr., Waco, Tex., Sleeper, Boynton, Burleson & Williams, Waco, Tex., P. M. Johnston, Waco, Tex., of counsel, for appellee.

Before RIVES, CAMERON and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The appellant sought to enjoin the appellee from violating the provisions of the Fair Labor Standards Act.[1] After a trial of the issues, the district court entered its findings of fact and conclusions of law as follows:

"Findings of Fact

"1. Defendant, Troy Lee Hunt, dba Gatesville Commission Company, owns and operates various farms and ranches, and leases and operates other farms and ranches, and he owns and operates Gatesville Commission Company, a cattle auction barn.

"2. During the period of time in question, Swift & Company and Armour & Company made weekly purchases of cattle at the auction sale held at said Gatesville Commission Company, which cattle went into their general stock, and after slaughter, unsegregated general stock shipments were regularly made into other states.

"3. The auction barn and pens in question occupy approximately two acres on a 24 acre farm in or near Gatesville, Texas, owned by defendant. An auction sale is held in the barn every Saturday, and, during the remainder of the week, defendant uses the pens connected with said barn in the handling of his own cattle. The remainder of the 24 acre farm on which the barn is located is used by him all during the week in his farming and cattle raising operations.

"4. In addition to the auction barn, there are two large barns on this 24 acre tract, in which feed and hay are stored for distribution to Troy Lee Hunt's various farms.

"5. Troy Lee Hunt's office for his entire farming operation is located in said auction barn, his various farming equipment and trucks are kept on said premises, and his employees meet there each morning for instructions, then go to work on the various farms.

"6. Some of the employees who work on Troy Lee Hunt's farms all during the week then work at the auction barn in connection with the auction sale which is held on Saturday. All employees are paid from a single payroll.

"7. Troy Lee Hunt makes a firm bid and offers to buy each head of cattle passing through said auction barn, and does in fact buy large numbers of cattle each week as a result of said offers.

"8. Approximately one-third of the cattle sold through said auction barn during the period in question were individually owned by the defendant, Troy Lee Hunt.

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by c. 736, 63 Stat. 910, 29 U.S.C.A. § 201 et seq.

"9. Troy Lee Hunt started the operation of his auction barn as an aid to his cattle business, in order to market his cattle to better advantage through his own auction barn, where many buyers would come and bid against each other.

"10. Troy Lee Hunt is engaged in substantial farming operations, and his farming operations are not merely a facade for an otherwise industrial venture.

"11. There is no manufacturing or processing operation involved in the operation of said auction barn, and no change in the condition or form of the livestock being sold therein, and passing therethrough.

"12. Many of Troy Lee Hunt's employees work at all times on his various farms; some of the employees work all weekdays on the various farms, and assist in the operation of the auction sale, at the auction barn, on Saturdays.

"13. The auction barn and farms in question are operated as a single operation, with one payroll, all employees reporting centrally, and many of the same employees doing farm work and helping with the auction sale.

"14. The employees who assist at the auction sale on Saturdays are general farm and ranch hands, and there is no industrialization involved, and said employees are not mill or factory hands.

"15. That said auction barn is operated by the defendant as an integral part of his overall farming operation, and in conjunction therewith. Defendant's operations and practices in his farming and in the operation of said auction barn are performed by a farmer, on a farm, as an incident to or in conjunction with such farming operations.

"Conclusions of Law

"1. Defendant, Troy Lee Hunt, in the operation of his auction barn, is within the general coverage of the Fair Labor Standards Act.

"2. Defendant and his employees engaged in the operation of said auction barn are exempt under Section 13(a)(6) of said Act, as being engaged in agriculture, as defined in said Act."

Final Judgment was entered:

" * * * that said defendant, Troy Lee Hunt, in the operation of said Gatesville Commission Company, is engaged in agriculture as that term is defined in the Fair Labor Standards Act, and the employees thereof are within the exemption of agricultural employees under Section 13(a)(6) of said Act, and the injunction and all other relief prayed for by plaintiff herein is denied."

Upon this appeal none of the findings of fact are challenged except the last, numbered 15, supra. Appellant insists that the district court erred in finding that appellee's operation of the auction barn was performed "as an incident to or in conjunction with *such* farming operations" (emphasis added). The attack centers around the word "*such*" which appellant insists is equivalent to "appellee's," and is inapplicable since only about one-third of the cattle sold through said auction barn were owned by the appellee. On the other hand, the appellee points out that he also made a firm bid on each head of cattle passing through the auction barn, and, in fact, bought large numbers of cattle each week as a result of said offers.

Section 13 of the Act, 29 U.S.C.A. § 213, captioned "Exemptions," provides in pertinent part: "(a) The provisions of sections 6 and 7 (that is, both the minimum wage and the overtime provisions) shall not apply with respect to * * * (6) any employee employed in agriculture * * *." "Agriculture" is defined in Section 3(f) of the Act, 29 U.S.C.A. § 203(f), as follows:

"(f) 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section

1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market, or to carriers for transportation to market."

Commenting on that definition in Farmers Reservoir Irrigation Co. v. McComb, 1949, 337 U.S. 755, 762, 763, 69 S.Ct. 1274, 1278, 93 L.Ed. 1672, the Supreme Court said:

"As can be readily seen this definition has two distinct branches. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations."

The only activity as to livestock listed within the "primary" meaning of agriculture is "the raising of livestock." In Walling v. Friend, 1946, 156 F.2d 429, 432, the Eighth Circuit noted, "Clearly defendants' (livestock auction) employees are not engaged in the raising of livestock." The question here, then, is: do appellee's livestock auction operations constitute agriculture in its secondary sense? That is, are they "practices performed by a farmer or on a farm as an incident to or in conjunction with such farming operations" ? Further,

narrowing the issue, appellee is a farmer and his auction barn is on a farm, but are the practices in question performed "as an incident to or in conjunction with *such* farming operations" ?

■ The burden of proving that its practices fall within the exemption rests upon the appellee. See Walling v. General Industries Co., 1947, 330 U.S. 545, 548, 67 S.Ct. 883, 91 L.Ed. 1088; Foremost Dairies, Inc. v. Ivey, 5 Cir., 1953, 204 F.2d 186, 188.

■ The proof showed that two-thirds of the livestock sold at appellee's auction barn belonged to other farmers.[2] On the buying end, the finding was that appellee makes a bid on each head of cattle and that he buys large numbers, but there is no evidence as to how large. When asked, "Is it customary for the operator of an auction barn to make an opening bid on cattle offered?", the appellee replied: "The auction barns does it various ways. There is a few boys do. I have always made my—that's mostly the custom. I understand that some barns, if someone doesn't get in on this bid—I mean raise this bid, they back up the bid, telling you how that is done, but I don't. I have never—whatever I say on a cow, if it's twenty too high, or whatever it is; if it's too cheap, the bidders voluntarily raise this cow; if it's too high, I get the cow for my bid. I have always made a practice of that." The proof shows that appellee, in making a bid on each head of cattle, was doing no more than what many operators of auction barns customarily do. It means little or nothing that, as a result of his bid on each head of cattle sold, appellee buys "large numbers" of them. He bids on all cattle, including his own, and his own cattle are included in the "large numbers" upon which his bid is accepted. There is, in our opinion, a total failure of proof that appellee's livestock auction operations are "incidental to 'such' farm-

2. Of those sold from March 5, 1955, through December 31, 1955, 10,892 head belonged to appellee, 18,830 head to other other farmers; during the year 1956, 13,-495 head belonged to appellee, 33,793 head to other farmers; from January 1, 1957, through April 1957, 6,144 head belonged to appellee, 11,645 head to other farmers.

ing operations," that is, to the farming operations of the appellee as distinguished from the farming operations of other farmers.

■ From the inception of the Act that has been an essential requisite of the exemption. In his earliest interpretative bulletin dealing with the subject [Interpretative Bulletin No. 14, para. 10 (f), August 1939; 1940 WHM 185], the Administrator stated the rule this way:

"It must be emphasized with respect to all practices performed by a farmer, for which a claim is made that they are incident to or in conjunction with his farming operations, that they must be performed *only* on the agricultural or horticultural commodities, dairy products, livestock, bees, fur-bearing animals, or poultry produced or raised by him."

In Farmers Reservoir & Irrigation Co. v. McComb, supra, 337 U.S. 755, 766–767, note 15, 69 S.Ct. 1274, 1280, 93 L.Ed. 1672, reads as follows:

"Although not relevant here, there is the additional requirement that the practices be incidental to 'such' farming. Thus processing, on a farm, of commodities produced by other farmers is incidental to or in conjunction with the farming operation of the other farmers and not incidental to or in conjunction with the farming operation of the farmer on whose premises the processing is done. Such processing is, therefore, not within the definition of agriculture. Bowie v. Gonzalez, 1 Cir., 1941, 117 F.2d 11."

See, also, Bowie v. Gonzalez, 1 Cir., 1941, 117 F.2d 11, 18; Calaf v. Gonzalez, 1 Cir., 1942, 127 F.2d 934, 936; N.L.R.B. v. Olaa Sugar Co., 9 Cir., 1957, 242 F.2d 714, 718.

Somewhat to repeat, Section 13 of the Act provides for total exemptions from both the minimum wage and the maximum hours provisions of the Act for many classes of employees, including those employed in "agriculture." Sec-tion 3 defines "agriculture" so as to include practices performed by a farmer or on a farm as an incident to or in conjunction with the farmer's farming operations. To bring himself within the exception, the appellee must prove that not merely some but substantially all of the farming operations to which the practices are incident were operations of the appellee farmer himself.

■ A basic factor for determining what practices are incident to or performed in conjunction with a farmer's farm operations is whether the practices are among those ordinarily, customarily, or usually performed by a farmer or on a farm. Maneja v. Waialua Agricultural Co., 1955, 349 U.S. 254, 265–267, 75 S.Ct. 719, 99 L.Ed. 1040; Mitchell v. Budd, 1956, 350 U.S. 473, 481, 76 S.Ct. 527, 100 L.Ed. 565. Only practices ordinarily performed by the farmer or on his farm meet the underlying rationale for that part of the exemption as thus expressed in Farmers Reservoir & Irrigation Co. v. McComb, supra, 337 U.S. 755, 760–762, 69 S.Ct. 1274, 1277:

"Agriculture, as an occupation, includes more than the elemental process of planting, growing and harvesting crops. There are a host of incidental activities which are necessary to that process. Whether a particular type of activity is agricultural depends, in large measure, upon the way in which that activity is organized in a particular society. The determination cannot be made in the abstract. In less advanced societies the agricultural function includes many types of activity which, in others, are not agricultural. The fashioning of tools, the provision of fertilizer, the processing of the product, to mention only a few examples, are functions which, in some societies, are performed on the farm by farmers as part of their normal agricultural routine. Economic progress, however, is characterized by a progressive division of labor and separation of function. Tools are made by a tool manufac-

turer, who specializes in that kind of work and supplies them to the farmer. The compost heap is replaced by factory produced fertilizers. Power is derived from electricity and gasoline rather than supplied by the farmer's mules. Wheat is ground at the mill. In this way functions which are necessary to the total economic process of supplying an agricultural product, become, in the process of economic development and specialization, separate and independent productive functions operated in conjunction with the agricultural function but no longer a part of it. Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations. The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity. The farmhand who cares for the farmer's mules or prepares his fertilizer is engaged in agriculture. But the maintenance man in a power plant and the packer in a fertilizer factory are not employed in agriculture, even if their activity is necessary to farmers and replaces work previously done by farmers. The production of power and the manufacture of fertilizer are independent productive functions, not agriculture."

While it is true that a farmer ordinarily sells the beef cattle that he raises, it is unusual for him to sell them at his own auction barn. Ordinarily the farmer uses the facilities of a livestock auction company.

In close cases there are various other tests, some of which were evidently considered by the district court in reaching its findings of fact quoted supra, for determining whether a given practice is incident to or in conjunction with farming. See Maneja v. Waialua Agricultural Co., supra, 349 U.S. 254, 264, et seq., 75 S.Ct. 719. In our opinion, this is not such a close case as calls for the consideration of those various tests. To treat them would be abstract and purposeless, when at best there must remain the fact that a substantial part of the practices were incident to or in conjunction with farming operations not of the appellee, but of other farmers. The fact that most of the cattle sold through the auction barn were owned by other farmers, and that at least a substantial number of such other farmers' cattle were bought by persons other than appellee, is fatal to the appellee's claim of exemption.

The district court did not go into the question of whether the employees employed in appellee's livestock auction business had been paid at substandard rates.[3] The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMERON, Circuit Judge.

I dissent.

3. The appellant concedes that appellee would be entitled to the 14-workweek exemption from overtime provided in Section 7(c) of the Act, 29 U.S.C.A. § 207(c), for employees "of an employer engaged * * * in handling * * * livestock * * *."