## WHITE v. ATCHISON, T. & S. F. R. CO.
### No. 10791.

Circuit Court of Appeals, Ninth Circuit.

June 7, 1945.

920

F. W. Turcotte, of Los Angeles, Cal., for appellant.

Jonathan C. Gibson and William F. Brooks, both of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The appellee-railway company commenced this action in the district court to recover freight under-charges, under § 6(7), Part I, Interstate Commerce Act, 49 U.S.C.A. § 6(7),[1] on various shipments made by the appellant-freight forwarder from California over the appellee's line and its connecting carriers to destinations in various other states. Judgment was entered in favor of the plaintiff-appellee, the defendant-appellant's motion for a new trial was denied, and the latter appeals. The appeal is submitted to us upon an agreed statement of fact.

■ Since interstate commerce laws are involved, the district court had jurisdiction, Jud.Code § 24(8), 28 U.S.C.A. § 41(8), and jurisdiction of the circuit court is invoked by virtue of Jud. Code, § 128, 28 U.S.C.A. § 225.

The appellant has, since April, 1937, conducted a freight forwarding business in which he engages the services of the appellee-railway company and its connecting carriers. Pursuant to such business, the appellant collected at his terminal at Los Angeles parcels of freight from various shippers throughout California. These were consolidated into carload lots and shipped via appellee and connections to the appellant's eastern terminals. Pursuant to this service bills of lading were issued in the name of the appellant, and he assumed responsibility for the safe delivery of the goods. Freight charges were collected from each of the appellant's customers to cover assembly of freight in his terminals, together with railway shipping charges.

An understanding existed between the appellee-railway company and the appellant-shipper to the effect that when a car was to be furnished the latter, the railway company would furnish two 40-foot cars and would bill the shipper for one 50-foot car. This understanding was honored in practice.[2] Habitually bills of lading relating to the shipments contained the no-

---

[1] 49 U.S.C.A. § 6(7): "Transportation without filing and publishing rates forbidden; rebates; privileges. No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

[2] It is to be noted that all shipments went forward under Item 503 of Trans-Continental Freight Bureau East Bound Tariff No. 3, Series I.C.C. No. 1431, which in part provides:

"Except where specifically provided to the contrary in individual items of this tariff, carrier will furnish car of dimensions or weight carrying capacity ordered by shipper, but if carrier for its convenience furnishes car of different dimensions or weight carrying capacity, the following rules will govern. * * *

"When car of smaller dimensions or less-

tation "One 50-foot car ordered; two smaller cars furnished by R.R." as did the freight waybills covering said shipments, although the evidence disclosed that the appellant gave no order for "one 50-foot car," and that the carrier at all times had 50-foot cars available and accessible. The appellant was thus enabled to use two 40-foot cars at the same rates as were contemporaneously applicable to a similar shipment made in a single 50-foot car, rather than at the higher rates chargeable for a shipment made in two 40-foot cars.

The instant action is based upon the assumption that the above arrangement was unlawful; that it was plaintiff-appellee's lawful duty to demand payment of the difference between the legal tariff for a 50-foot car and the legal tariff for two 40-foot cars.

It appears that the judgment of the district court is correct,[3] unless, as urged by the appellant in this appeal, § 419 of Part IV of the Interstate Commerce Act, 49 U.S.C.A. § 1019, in effect deprives the court of jurisdiction of the action. The section is as follows:

"*Liability for past acts and omissions.* No person shall be subject to any punishment or liability under the provisions of this chapter and chapters 1, 8, and 12 of this title on account of any act done or omitted to be done, prior to the effective date of this chapter, in connection with the establishment, charging, collection, receipt, or payment of rates of freight forwarders, or joint rates or divisions between freight forwarders and common carriers by motor vehicle subject to this chapter and chapters 1, 8, and 12 of this title."

The question was raised at the trial of this action, although it was not adequately presented, and the court made no finding in relation to it. Since the court entertained the cause, it must be taken that he decided that the statute referred to did not deprive the court of jurisdiction.

The appellant's argument is, briefly, that prior to the enactment of the Interstate Commerce Act, carriers were not required to abide by published tariffs, but were restricted only by the broad limits recognized under the common law that rates should not be unreasonable; that while the appellant's relation to his own customers was that of freight forwarder and not of common carrier, he was nevertheless a shipper in his relations with the rail carriers whose facilities he employed; that as a shipper, his dealings with the appellee with respect to the freight rates were controlled by the provisions of § 6(7) of Part I of the Interstate Commerce Act, but that the enactment of § 419 of Part IV of the Interstate Commerce Act, effective May 16, 1942, abolished the appellee's right of action in the circumstances of this case.

The Interstate Commerce Act in its present form comprises four parts: Rail Carriers, Part I, Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., effective Feb. 28, 1920; Motor Carriers, Part II, Interstate Commerce Act, 49 U.S.C.A. § 301 et seq., effective Aug. 9, 1935; Water Carriers, Part III, Interstate Commerce Act, 49 U.S.C.A. § 901 et seq., effective Sept. 18, 1940; and Freight Forwarders, Part IV, Interstate Commerce Act, 49 U.S.C.A. § 1001 et seq., effective May 16, 1942. Each part deals with operations and regulations of the respective activities in general.

Prior to the enactment of Part IV of the Act, freight forwarders, as a class, had not been made subject to the jurisdiction

---

weight carrying capacity is furnished, actual weight applies provided it is loaded to its full visible capacity or as heavily as loading conditions will permit; the balance of the shipment will be taken in another car at actual weight and carload rate, and the entire shipment will be subject to carload minimum weight applicable to the car of dimensions or weight carrying capacity ordered."

[3] See Union Pacific R. Co. v. United States, 313 U.S. 450–462, 61 S.Ct. 1064, 85 L.Ed. 1453; United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243; Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409; Louisville & Nashville R. Co. v. Central Iron & Coal Co.,

265 U.S. 59–65, 44 S.Ct. 441, 68 L.Ed. 900; Keogh v. Chicago & Northwestern R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; Louisville & Nashville R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853, L.R.A.1915E, 665; Pennsylvania R. Co. v. International Coal Mining Co., 230 U.S. 184, 33 S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315; Button v. Atchison, Topeka & Santa Fe R. Co., 8 Cir., 1 F.2d 709; McFadden v. Alabama Great Southern R. Co., 3 Cir., 241 F. 562; Western Trunk Line Rate Increases, 43 I.C.C. 481–493; Noble v. Baltimore & Ohio R. Co., 22 I.C.C. 432; 13 C.J.S. Carriers, § 393, pp. 873–876.

of the Interstate Commerce Commission, except, under the provisions of Part I of the Act, when such "freight forwarders" were in fact "shippers." In the latter capacity, alone, they were subject to such jurisdiction.

Section 419 of Part IV of the Act limits and restricts the liability of freight forwarders for past acts and omissions. The question here is as to what acts and omissions such limitations and restrictions are applicable.

The appellant contends that unless the language of the limiting and restricting section is construed to mean the rates applicable to shipments of freight forwarders over the lines of rail carriers subject to Part I of the Act, the phrase "subject to this chapter and chapters 1, 8, and 12 of this title" (which in reality is equivalent to the phrase "subject to Parts I, II, III, and IV of the Interstate Commerce Act") would become meaningless.

It is to be noted that the whole phrase under consideration reads "or joint rates or divisions between freight forwarders and common carriers by motor vehicle subject to this chapter and chapters 1, 8, and 12 of this title." The phrase is quite understandable in the light of difficulties which arose after the enactment of Part II of the Act relating to motor carriers. See Acme Fast Freight v. United States, D.C., 30 F. Supp. 968, affirmed 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993. A review of the legislative history concerning the section in question is also helpful.[4] For authorities lending aid to the construction of statutes, see Puget Sound Elec. Ry. v. Benson, 9 Cir., 253 F. 710; Porto Rico Ry. Etc. Co. v. Mor, 253 U.S. 345, 40 S.Ct. 516, 64 L.Ed. 944; Pampanga Sugar Mills v. Trinidad, 279 U.S. 211, 49 S.Ct. 308, 73 L.Ed. 665; and 50 Am.Jur. 258, 259. Furthermore, the whole of the chapter relating to freight forwarders repeatedly refers to rates and charges of freight forwarders.

[4] House Report No. 1172, 77th Congress, 1st Session, is in part as follows: "As has been previously explained in this report, freight forwarders and common carriers by motor vehicle subject to Part II have been for a number of years operating under joint rates, which, by reason of the decision of the Commission in the Acme case [D.C., 30 F.Supp. 968], and in the other freight forwarder cases, they probably had no authority to establish and observe, even though the Commission's orders in those cases have not yet become effective. As a result of this, various persons may have subjected themselves to penalties and liabilities under Federal statutes, even though during the period of operation under such joint rates there may have been no deliberate intention to violate the law, and no way of knowing for certain whether they were violating the law. Freight forwarders may be liable on account of failure to pay the regularly published tariff rates of common carriers by motor vehicle. Common carriers by motor vehicle may be subject to liability because of failure to collect from freight forwarders their regularly published local rates. It is possible that shippers may also technically be subject to liabilities.

"This section relieves freight forwarders, common carriers by motor vehicle, and other persons from penalties and liabilities under the Interstate Commerce Act or any other Federal statute on account of anything done or omitted to be done, prior to the enactment of Part IV, in connection with the establishment, charging, collection, receipt, or payment of rates of freight forwarders, or joint rates or divisions between freight forwarders and common carriers by motor vehicle subject to Part II."

House Report No. 2066, 77th Congress, 2nd Session, contains the following comment: "Section 419 of the House Amendment, because of the unsettled legal status of joint rate arrangements between common carriers by motor vehicle and freight forwarders since the decision of the Commission in the Acme case (docket MC-2200) in 1937, provided that no person should be subject to any punishment or liability under the provisions of any Federal statute, on account of any act done or omitted to be done prior to the effective date of Part IV, in connection with the establishment, charging, collection, receipt, or payment of rates of freight forwarders, of joint rates or divisions between freight forwarders and common carriers by motor vehicle subject to the Interstate Commerce Act. The Senate bill contained no such provision. Section 419 of the conference substitute is the same as the section passed by the House, except that it grants such immunity from punishment or liability under the provisions of the Interstate Commerce Act only. This change accords with the recommendation made by the Attorney General of the United States."

See also H.R. 3684, 77th Cong., 1st Sess.; Senate Report 132, 77th Cong., 1st Sess.; Senate Resolution 146; Senate Bill 210, 77th Cong., 1st Sess.; Senate Bill 3665; Senate Bill 3666.

We are of the opinion that the limiting and restricting section of the Interstate Commerce Act (§ 419, Part IV) does not apply to the facts of the instant action, and that the trial court was not in error in taking jurisdiction of the cause.

Affirmed.