## NATIONAL CARLOADING CORPORATION v. ATCHISON, T. & S. F. RY. CO.
### No. 10756.

Circuit Court of Appeals, Ninth Circuit.

June 29, 1945.

Hugh Gordon, of Los Angeles, Cal., Robert E. Quirk, of Washington, D. C., and J. Edward Haley, of Los Angeles, Cal., for appellant.

William F. Brooks and Jonathan C. Gibson, both of Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The Atchison, Topeka and Santa Fe Railway Company brought action in the district court against National Carloading Corporation to recover, under § 6(7), Part I, Interstate Commerce Act,[1] freight undercharges on shipments made by the latter, as freight forwarder, from California to various eastern points. From a judgment in favor of the plaintiff, the freight forwarder appeals.

Appellant-freight forwarder, as shipper,

---

[1] 49 U.S.C.A. § 6(7): "Transportation without filing and publishing rates forbidden; rebates; privileges. No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

engaged the transportation facilities of the appellee-carrier and its connecting lines for the shipping of household goods. An understanding existed between the parties, and was followed by them, that upon appellant's ordering a 50-foot car, two 40-foot cars would be furnished by appellee. Orders for cars were usually handled over the telephone since no written orders were required by the carrier. With few exceptions shipments were made in two 40-foot cars, and they moved forward under Item 503 of Transcontinental Freight Bureau East-bound Tariff No. 3-M, Interstate Commerce Commission, No. 1431, which provides in part as follows:

"Except where specifically provided to the contrary in individual items of this tariff, carrier will furnish car of dimensions or weight carrying capacity ordered by shipper, but if carrier *for its convenience* furnishes car of different dimensions or weight carrying capacity, the following rules will govern. * * *.

"When car of smaller dimensions or less weight carrying capacity is furnished, actual weight applies provided it is loaded to its full visible capacity or as heavily as loading conditions will permit; the balance of the shipment will be taken in another car at actual weight and carload rate, and the entire shipment will be subject to carload minimum weight applicable to the car of dimensions or weight carrying capacity ordered * * * [emphasis added]."

Bills of lading, way bills and other shipping documents contained the recital, "50-foot car ordered, two 40-foot cars furnished at railroad company's convenience." Thus, appellant was enabled to use two 40-foot cars under rates chargeable and applicable to a single 50-foot car.

After an investigation by the Interstate Commerce Commission in 1941, the practice outlined was stopped, and appellee-carrier brought the within action to recover undercharges for the period May, 1939, to February, 1941. It should be noted here that conduct, intention, mistake and misunderstanding are no defense to such an action. McFadden v. Alabama Great Southern R. Co., 3 Cir., 241 F. 562. To the effect that it is not only the right but the duty of a carrier to bring suit see Pennsylvania R. R. Co. v. Fox & London, Inc., 2 Cir., 93 F.2d 669-671; Louisville & N. R.

Co. v. Williamson, 5 Cir., 87 F.2d 34, 35; 13 C.J.S., Carriers, § 393, p. 873.

In holding for appellee-carrier, the District Court found in part that 50-foot cars were available during the period involved, that no genuine order was placed for a 50-foot car in any of the one hundred and five instances for which recovery of undercharges was being sought, and that the parties herein gave no consideration to the question of the carrier's convenience as required by the tariff. It took the view that the carriers' convenience rule is not operative or effectively invoked until the carrier has received from the shipper a genuine order for a car of a specific size, and that since under the facts no genuine order for a 50-foot car was placed by the shipper, and since no discretion was exercised by the carrier to determine the existence of its convenience, the "two for one rule" was not successfully invoked herein.

The district court construed the tariff rule to mean that "The substitution can be made only when the car ordered is not readily available, and it is not operatively advantageous for the carrier to furnish such car." Appellant thinks the construction too narrow and points out that the rule, when first adopted in 1910, allowed substitution of two cars for one only when the carrier was "unable" to furnish the larger car ordered, that by a later amendment the rule was relaxed to allow substitution "if practicable," and that in 1933 the rule was further relaxed to allow substitution as a matter of "carriers' convenience."[2] The district court's construction appears to us to be sufficiently broad. Furthermore, since the decision does not properly turn on the point, appellant was in no way harmed. According to the district court's opinion " * * * The evidence establishes the fact that under the circumstances indicated carrier's agent might have been justified in arriving at either conclusion in determining whether to furnish one larger or two smaller cars. In the absence of collusion, I would hold that the agent had not abused the discretion vested in him by substituting the smaller cars." Clearly on principle "carriers' convenience" cannot mean entering into an agreement with a shipper in opposition to the very purpose of the Interstate Commerce Act and the tariffs published thereunder.

---

[2] Under an amendment effective December 8, 1941, the carrier "will endeavor" to furnish the car ordered.

We take appellant's position to be that if a carrier's convenience is in fact subserved by the substitution, the tariff rule applies, that is, that under the rule a carrier is permitted to furnish at its convenience two 40-foot cars in lieu of the single 50-foot car ordered by the shipper notwithstanding an invalid agreement to the same effect. It is well established that the acts of the parties herein affect not only themselves but also the welfare of the public. Although the tariff rule might be stretched to fit the instant situation, in its true meaning and purpose it was not the real motivation of the agreement. Rather, and as both parties realized, it was totally disregarded insofar as any actual exercise of discretion on the part of the carrier was concerned.

■ Appellant's brief declares: "There is no evidence whatever in the record of any talk or written communication exchanged between these or other employees of appellant and appellee showing an agreement, plan or collusive understanding for the substitution to be made for the purpose of giving appellant any monetary or other advantage in the transportation of its shipments." The record does not bear out this statement. That such an agreement, collusive in effect, existed between the parties cannot be doubted.[3]

■ There is some question as to whether any benefit was derived from the "two for one" substitution. Appellant admits that expeditious loading of its freight was effected[4] but denies the district court's finding that the substitution, furnishing eighty feet of space for loading instead of fifty feet, was an advantage in loading household goods. We think the finding is supported by substantial evidence. Damage to goods was less likely to occur in the greater space provided by two 40-foot cars, for the necessity of stacking articles on top of each other was largely avoided. No bracing was needed in 40-foot cars where goods were packed closely together on the

---

[3] Regarding his negotiations with Edgar H. Brockelmann, manager of appellant's household goods division, Edward Mendelsohn, agent of appellee-carrier, testified:

"Q. What was the substance of that conversation? A. That he [Brockelmann] had placed an order for a 50-foot car with the car clerks in the yard, and he wanted me to see to it that he got two 40-foot cars.

"Q. Did he say why? A. No, he didn't give any particular reason, because it was common knowledge, common talk with all railroads, that they wanted two for one; it was easier loading, and so forth."

Manager Brockelmann testified in part:

"Q. Did you at any time tell Mr. Mendelsohn: I have ordered a 50-foot car, but would like to have you furnish me two 40-foot cars? A. Yes, sir

*    *    *    *    *    *

"Q. I understood you to state to the court that you do think you had made a statement to Mr. Mendelsohn that you had ordered a 50-foot car but wanted two 40s? A. I think I said that.

*    *    *    *    *    *

"Q. Did you ever tell Mr. Gordon [assistant agent of appellee] that you wanted two 40-foot cars instead of one 50-foot car that you were ordering? A. I might have.

*    *    *    *    *    *

"Q. I think you stated to the court that you readily knew of the practice of the carrier furnishing two for one. A. I don't know how the court meant that. I knew we were doing it. I don't know whether I readily knew it. I know that sometimes it was a fact; whether or not it was good practice, that was never a question to me, because we never had any conversations on it until later, after the matter came up for controversy."

Manager Brockelmann admitted too, that whenever he really wanted 50-foot cars, he could and did get them. We note here that after the investigation of the Interstate Commerce Commission, 50-foot cars were ordered by and furnished to appellant with few exceptions.

J. L. Ray, agent of appellee, said he knew that two 40-foot cars were being furnished in lieu of the one 50.

Harry Valasky, chief night clerk of appellee, testified:

"Q. If Mr. Brockelmann would order a car * * * what would he say to you? A. He would say: Valasky, I want two 40-foots on an order for a 50-foot, and I would go ahead and write that, and the station order would read 50-foot, and I would request the yardmaster to give him two 40s. * * *."

The evidence also disclosed that on occasion when a 50-foot car was actually furnished, Manager Brockelmann protested, whereupon the 50-foot car was switched out and replaced with two 40-foot cars.

[4] Appellant maintained a freight dock adjacent to the freight depot of appellee, and frequently 40-foot cars were standing available on the tracks.

floor space; bracing was necessary in the larger cars where goods were stacked. The problem of loading and unloading was considerably simplified.

There is substantial evidence to support the district court's findings. Rule 52(a) of Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

 Appellant insists that the action is barred by § 419, Part IV, Interstate Commerce Act, 49 U.S.C.A. § 1019. However, this court decided to the contrary under similar facts in White v. Atchison, T. & S. F. Ry. Co., 9 Cir., 149 F.2d 919.

The district court allowed interest on the sum due as undercharges. We find this to be proper.

Affirmed.