The **SWEETLAKE LAND AND OIL COMPANY, Inc.,** Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 20740.

United States Court of Appeals
Fifth Circuit.

July 9, 1964.

Rehearing Denied Sept. 17, 1964.

Everett R. Scott, Jr., Kaufman, Anderson, Leithead, Scott & Boudreau, Lake Charles, La., for Sweetlake, petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Paul Elkind, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Warren M. Davison, Duane R. Batista, Attys., N. L. R. B., for respondent.

G. Allen Kimball, Lake Charles, La., for American Rice Growers Cooperative Assn., amicus curiae.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and McRAE, District Judge.

TUTTLE, Chief Judge.

This petition for review of an order of the Board and cross-petition for enforcement principally presents the question whether certain employees of petitioner are "argicultural laborers" and, therefore, exempt from the collective bargaining requirements of the National Labor Relations Act. If they are not exempt, then the Court must also decide whether petitioner violated Section 8(a) (5) and Section 8(a) (1) of the Act for failure to bargain and for coercive conduct.

Before considering the facts it is important to state the statutory language which controls the question of exempt status. Section 2(3) of the NLRA excludes from its coverage "any individual employed as an agricultural laborer." This latter term is not defined in the Act, but Congress, in a rider to the Board's annual appropriation bill, has incorporated into this Section the definition of "agriculture" set forth in Section 3(f) of the Fair Labor Standards Act, 29 U.S.C.A. § 203(f). This Section provides in relevant part:

" 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities * * *

the raising of livestock, bees, furbearing animals, or poultry, and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including perparation for market, delivery to storage or to market or to carriers for transportation to market."

This Section of the Fair Labor Standards Act has been construed by the Supreme Court in Farmer's Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672. The Court called attention to the fact that the Section had a primary definition which refers to "farming and all its branches," encompassing direct farming operations such as the cultivation and tillage of the soil and a secondary definition which the Court said "includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such' farming operations." 337 U.S. 755, 762–763, 69 S.Ct. 1274, 1278. It is not contended here that the activities under consideration constitute "primary farming." The exemption, if it exists, must arise because of the activities falling within the secondary definition, that is, a practice performed on a farm incidental to the farming operations of the farmer himself.

The facts, to which the above definition must be applied, are not in dispute. The company is a Louisiana corporation owning about 5200 acres of ricelands near Holmwood, Louisiana. Of this acreage, the company farms 600 acres, and 36 tenant farmers cultivate the remaining 4600 acres on a share cropping arrangement under which the company supplies land, seed, water and half the fertilizer in return for half the crop. The company oversees the entire farming operation and determines the varieties of rice to be grown and determines the policies with respect to fertilizers, irrigation and the like.

The harvested rice contains about twice as much moisture as is permissible by Department of Agriculture standards.

To prepare it for marketing, the company operates a rice drier and a warehouse on the farm. In 1961, the company dried about 36,000 barrels of rice at its drier. Of this amount, about 60 percent came from the acreage farmed by the company and 40 percent came from land cultivated by the tenants under the half-and-half arrangement. Thus, 20 percent of the rice belonged to the tenant farmers. They were charged the standard 60 cents to 65 cents per bushel fee for drying. A storage fee was charged the tenants for any rice not sold within 30 days. They sold the rice to whomever they wished. They were not required to have the rice dried in the company's drier. Some tenants had their rice dried at other driers on farms in the vicinity at similar charges. The company also retained rice in its warehouse for the account of purchasers and charged a fee for storage.

There are approximately ten employees regularly engaged in the drier and warehouse. These employees clean and treat seed rice, distribute seed rice and fertilizers to the fields, and repair the physical facilities, as well as handling the rice during harvest. During harvest season an additional three or four men are hired.

On February 19, 1962, the Rice Workers Local of the Meat Cutters Union filed a representation petition. At a hearing on the petition, the company contended that its employees were agricultural laborers specifically excluded from coverage under the Act, but the Board found they were not and certified the production and maintenance employees at the drier and warehouse as an appropriate unit. This determination was based in part on a ruling sought by the Board from the Department of Labor in which the legal officer of that department "administratively advised" the Board that the particular operations were not deemed by the Labor Department to meet the Fair Labor Standards Act's definition of agriculture since both were performed on rice in which both employer and tenant farmers had an interest, and since the

warehouse was used to store rice sold by the company to mills but not immediately delivered.

At the election, the company challenged all thirteen ballots cast on the ground that the voters were agricultural laborers, but the challenges were overruled and the union won the election. On the day the revised tally of the votes was made, the Board found that the warehouse superintendent said that he and the company's president were "very mad" about the results of the election, that although employees had been kept busy during slack periods in the past there would be lay-offs in the future, that the employees had had their "day" but he would have his day later. The company at all times refused to bargain with the union, contending its certification was invalid.

The Board found that the refusal to bargain was held to violate Section 8(a) (5) and (1) of the Act and the threat of future lay-offs was found to violate Section 8(a) (1).

As pointed out above, the Supreme Court in discussing the secondary definition in the Farmer's Irrigation opinion, supra, makes it plain that to come within this definition the incidental services such as the drying and preparation for market, to be exempt, must be done in conjunction with the farming operations of the owner of the farm itself. While it is recognized that in the Farmer's Irrigation Company case this statement by the Court was not necessary to the decision, since the Court found that the irrigation activities there were not performed on *any* farm, nevertheless the Court's footnote 15 on page 766, 69 S.Ct. on page 1280 is such a clear statement of its views that we would feel bound by it were this the only authority. This footnote states:

"Although not relevant here, there is the additional requirement that the practices be incidental to 'such' farming. Thus, processing on a farm of commodities produced by other farmers is incidental to or in

conjunction with the farming operation of the other farmers and not incidental to or in conjunction with the farming operation of the farmer on whose premises the processing is done. Such processing is, therefore, not within the definition of agriculture. Bowie v. Gonzalez, 1 Cir., 1941, 117 F.2d 11."

Morevoer, this Court has construed the language embodying the terminology "such" farm exactly as stated by the Supreme Court in the footnote in the Farmer's Irrigation Company case. This was the basis of the decision of this Court in Mitchell v. Huntsville Wholesale Nurseries, Inc., 5 Cir., 267 F.2d 286. There, this Court quoted the last two sentences of the footnote and applied the language to a case, there before the Court, in which a company admittedly engaged in farming itself maintained a warehouse where it handled and processed stock bought by it from other farmers who, much like those in the instant case, carried on their farming activities somewhat under the direction and supervision of the principal company itself. See 267 F.2d 286, 290. We note that the farms from which the purchases were made in the Huntsville case were in different states and a substantial distance from the warehouse, but we think this makes no difference with respect to the point here at issue. Here there is no question but that the rice raised by the tenants was their rice, belonged to them in every respect and could be disposed of by them either before or after drying at their will. It was economically feasible for them to the extent of the capacity of the drier, to have it dried in the petitioner's drying plant and stored in petitioner's warehouse. This did not make the activity of drying the rice of the tenant farmers an activity of the petitioner itself as a part of its farming operations. We conclude therefore that the agricultural exemption did not extend to this operation. The employees were covered employees.

■■ Petitioner here complains that it has been denied some legal rights by reason of the fact that the Labor Board communicated with the Department of Labor to get its views in the construction of the Fair Labor Standards Act's agricultural exemption definition and that the Labor Board indicated in its order denying exemption that it had considered the view expressed by the Labor Department. Certainly it would be improper for any factual determination or any legal conclusion to be furnished to the Labor Board that would have any presumptive or binding effect on the ultimate decision of the case without the petitioner having had an opportunity to be present at or to present its views to such other administrative agency. Such, however, is not the case here. The Board had the responsibility of making an initial determination whether in its views this was an exempt activity. Its views in this matter carry no presumption of correctness. The Court must ultimately determine what the law is with respect to the matter. We conclude that no substantial rights were denied to the petitioner by reason of this administrative advice given the Labor Board by the Department of Labor.

■■ Once the basic determination is made that these employees are not exempt as agricultural laborers, the rest of the pieces of the litigation fall immediately into place. It is clear that there was a failure to bargain. Thus, there was a violation of Section 8(a) (5) and 8(a) (1) on this account. It is also clear, we think, that the language used by the general manager to show his displeasure and that of the president of the company and the implied threat contained therein adequately supported the Board's finding that there was a further 8(a) (1) violation.

It follows therefore that the petition for review must be denied and the order of the Board will, at the motion of the Board, be enforced.