Peter J. BRENNAN, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

GUSTAFSON'S DAIRY, INC.,
Defendant.

No. 74–69–Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville Division.

Sept. 26, 1974.

As Amended Nov. 20, 1974.

James H. Woodson, Atty., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

William G. Cooper, Jacksonville, Fla., for defendant.

ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

The Secretary of Labor brings this action under Section 17 of the Fair Labor Standards Act, 29 U.S.C. § 217 (hereinafter referred to as the Act). He seeks to enjoin defendant Gustafson's Dairy, Inc., from violating the provisions of Section 15(a)(2) of the Act, 29 U.S.C. § 215(a)(2), and to restrain defendant from withholding payment of overtime compensation due employees under Section 7 of the Act, 29 U.S.C. § 207. Section 7 requires that employers pay employees at a rate of not less than one and one-half times the regular rates at which they are employed for hours worked in excess of forty hours per week.

Only eight of defendant's employees are involved in this action. While admitting the general jurisdictional allega-

tions of the Secretary's complaint,[1] Gustafson's affirmatively alleges that these particular employees are specifically exempt from the operation of Sections 15(a)(2) and 7 of the Act by Section 13(b)(12) of the Act, 29 U.S.C. § 213(b)(12), exempting "any employee employed in agriculture. . . . " Finding that the eight do not come under the agricultural exemption, this Court holds for the Secretary.

## I.

Gustafson's Dairy, Inc., is a Florida corporation engaged in the production and distribution of dairy products. From its establishment in 1908 until the present it has been owned by the Gustafson family. In the early years of its existence, Gustafson's was typical of dairying operations in northern Florida. In those years the dairy industry predominately consisted of a number of small dairy farms. Each farm was owned and operated by a single family whose members actively engaged in the production of raw milk, the processing of this milk into a marketable commodity and the delivery of the finished product to the individual consumers in the vicinity. With increases in consumer demand, the added sophistication of dairying equipment, and the advent of modern transportation systems, many of these family operations eventually found it more economical to confine themselves to either the production of raw milk or the processing of raw milk into marketable milk. Gustafson's, however, has avoided this trend and maintains itself today as both a producer and processor.

Gustafson's has always maintained a herd of dairy cattle. For most of the dairy's existence this herd has supplied all the raw milk required. The demand for Gustafson's milk, however, eventually outstripped the supply which could be produced from its own herd, thus compelling Gustafson's to turn to outside sources for raw milk.

Most of the raw milk purchased from outside comes from the Upper Florida Milk Growers Association. This milk is trucked to Gustafson's processing facility where it is commingled with the milk produced by Gustafson's and placed in storage until processed. The amount of milk purchased varies from month to month. The record reveals, for example, that, in August 1973, Gustafson's purchased 45.4% of its raw milk requirement from outside sources, while in February 1974, Gustafson's purchased only 17% from outside sources. The average amount purchased from outside sources is approximately 28% of the raw milk requirement. The percentage varies according to the output of Gustafson's own cows which in turn varies with the seasons. The controlling factor in determining how much outside milk is brought in is, of course, the amount of raw milk required to meet the demand for the finished product.

Gustafson's maintains its processing facility at its farm in Green Cove Springs, Florida. There the raw milk is refined into its various by-products. Most of these by-products are derived exclusively from the raw milk while others such as chocolate milk, buttermilk and skimmed milk require mixture with additives. The additives are primarily obtained from outside sources. In addition, Gustafson's finds it necessary to handle a small percentage of products which are obtained completely from outside sources. Cottage cheese, sour cream and orange and grapefruit juices are purchased by Gustafson's and then resold.

## II.

Section 13(b)(12), 29 U.S.C. § 213(b)(12), exempts from the operation of the Fair Labor Standards Act "any employee employed in agriculture. . . . " Under Section 3(f), 29 U.S. C. § 203(f), "agriculture" is defined to include,

" . . . farming in all its branches and among other things includes . . . dairying . . . and any practices . . . performed by a

---

1. Sections 3(r), 3(s)(1) and 17 of the Act, 29 U.S.C. §§ 203(r), 203(s)(1) and 217.

farmer or on a farm as an incident to or in conjunction with *such* farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market. (emphasis added)

Commenting on this definition, the Supreme Court has said,

As can be readily seen this definition has two distinct branches. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as . . . dairying . . . are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations.

Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949). It is clear then that the agricultural exemption has been interpreted to include not only farm workers in the traditional sense but also those employed in non-agricultural jobs yet jobs necessarily associated with the complete and successful operation of an agricultural enterprise. To be exempt, an employee may fall into either category. Thus, when considering the applicability of the exemption to specific employees, a two level analysis is required —first, to see if their employment situation fits the primary meaning of agriculture and then in the alternative, to see if it fits the secondary meaning.

(a) *Primary Meaning*

■ As discussed in N. L. R. B. v. Tepper, 297 F.2d 280 (10th Cir. 1961), the dairying industry,

encompasses a great number of activities directed toward the production of milk, butter and cheese, and commonly entails two distinct businesses—that of the dairy farmer and that of the processor. The discussion of this Act [Fair Labor Standards Act] in the United States Senate demonstrates clearly that the exemption was intended for the farmer and not the processor, 81 Cong.Rec., July 27, 1937, p. 7656.

*Tepper, supra,* at p. 282. In accordance with the awareness of this practical bifurcation of the dairying industry, the description of dairying as intended in the Act has been limited in the following way:

'Dairying' includes the work of caring for and milking cows or goats. It also includes putting the milk in containers, cooling it, and storing it where done on the farm. The handling of milk and cream at receiving stations is not included. Such operations as separating cream from milk, bottling milk and cream, or making butter and cheese may be considered as 'dairying' under some circumstances, or they may be considered practices under the "secondary" meaning of the definition . . ., *if they are not performed on milk produced by other farmers or produced on other farms.* (emphasis added)

29 C.F.R. 780.111. Little guidance is offered by the above definition as to which dairying activities commonly characterize dairy farming as opposed to processing, but one thing is clear. Dairy farming ends and processing begins when the questioned activity is performed on milk produced by other farmers and on other farms.

All eight employees involved in this action work at Gustafson's facility in Green Cove Springs. Their jobs are somewhat specialized.[2] It is not neces-

---

2. Rodger Turner—Case Stacker and Washer
Charlie W. Padgett—Quart Machine Operator
Jimmy E. Wagner—Loading Dockhand
Rubin Moody—Loading Dockhand

Emmett Qualls—Assistant Processor
Hubert Underwood—Half-gallon Machine Operator
Richard Maderi—Processor
Charles W. Butcher—Backup-man

sary in this opinion, however, to particularize the various functions performed by each. Defendant is not denied exempt status for the employees because of the type of work they perform, but rather because of the source of the product upon which it is performed. Suffice it to say that the functions performed by each are performed after the Gustafson milk is commingled with outside milk. They cannot therefore be exempt under the primary meaning of agriculture.

### (b) *Secondary Meaning*

■■ A difficult question arises in applying the secondary meaning of agriculture to a dairying enterprise when the enterprise engages in both farming and processing as Gustafson does. Specifically, the question is, does a processing operation, which would otherwise not be exempt, fall within the exemption because of its close association with the dairy farming. In the context of the present case, this Court holds that it does not. Again, this holding is compelled by the fact that Gustafson's processes milk derived from outside sources as well as milk from its own herd. If a dairyman produces raw milk, processes only that milk in his own facility and then markets it, he is clearly a "farmer" as to the production of the milk. His employees in the production operation are thus exempt from the Act under the primary meaning of agriculture. Whether the employees of the processing facility are also exempt is a question beyond the facts of this case. In Wirtz v. Jackson & Perkins Co., 312 F.2d 48 (2d Cir. 1963), however, in an analogous situation the Secretary of Labor conceded that the exemption would apply.[3] When a dairyman processes and distributes both his own milk and that of others, he is still a farmer as to his own production but not as to his processing. This holding is compelled by a host of cases which stand for the proposition that for the processing to be "incident to or in conjunction with such farming operations", it must be incident to his operations *exclusively*. The primary authority for the proposition is footnote 15 of the United States Supreme Court's opinion in Farmers Reservoir & Irrigation Co. v. McComb, 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672, note 15 (1972), which reads:

. . . there is the additional requirement that the practices be incidental to 'such' farming. Thus processing, on a farm, of commodities produced by other farmers is incidental to or in conjunction with the farming operation of the other farmers and not incidental to or in conjunction with the farming operation of the farmer on whose premises the processing is done. Such processing is, therefore, not within the definition of agriculture. Bowie v. Gonzalez, 117 F.2d 11 (1st Cir. 1941).

Further authority is found in Mitchell v. Hunt, 263 F.2d 913 (5th Cir. 1959), wherein the Court of Appeals adopted the statement in the Secretary of Labor's interpretive bulletin [Interpretive Bulletin No. 14, para. 10(f), August 1939; 1940 WHM 185], which read:

It must be emphasized with respect to all practices performed by a farmer, for which a claim is made that they are incident to or in conjunction with his farming operations, that they must be performed *only* on the agricultural or horticultural commodities, dairy products, livestock, bees, fur-

---

3. Jackson & Perkins Company operated a large nursery business. As part of its operations, Jackson & Perkins maintained several large storage facilities. The Secretary of Labor brought suit to enjoin the nursery from violating the minimum wage and overtime provisions of the Fair Labor Standards Act. Both the district court and the Court of Appeals for the Second Circuit concluded that the agricultural exemption was applicable to work performed upon stock grown by the nursery itself, but was not applicable to work performed upon stock grown by independent contract growers.

bearing animals, or poultry produced or raised by him.

Mitchell v. Hunt, *supra,* at 917 (emphasis in original). *See, also,* Sweetlake Land and Oil Co. v. N. L. R. B., 334 F. 2d 220 (5th Cir. 1964); N. L. R. B. v. Tepper, 297 F.2d 280 (10th Cir. 1961); Mitchell v. Huntsville Wholesale Nurseries, Inc., 267 F.2d 286 (5th Cir. 1959); and Chapman v. Durkin, 214 F. 2d 360 (5th Cir. 1954). No distinction can be made between work performed on Gustafson's milk and that performed on outside milk, for the performance by an employee of both exempt and non-exempt work during the same work week defeats the exemption. Hodgson v. Wittenburg, 464 F.2d 1219 (5th Cir. 1972).

In conclusion, Gustafson's processing facility employees cannot be said to be agricultural employees within either the primary or the secondary meaning of the term. They must, therefore, be paid for their overtime hours in accordance with Section 7 of the Fair Labor Standards Act.

In so holding, this Court expressly declines to follow its own ruling in Skipper v. Superior Dairies, Inc., No. 73–514–Civ–J–S, rendered March 1, 1974. To the extent *Skipper* indicated a contrary holding insofar as the agricultural exemption is concerned, it is hereby overruled.[4]

This order and opinion constitutes this Court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

Therefore, it is

Ordered:

The parties are allowed 30 days from the date of this order within which to demonstrate to this Court the exact amounts of overtime wages owing the claimants herein.

---

4. The decision in *Skipper* rested on five separate grounds:

   (a) That plaintiff was exempt from the coverage of the Fair Labor Standards Act by virtue of the "agricultural" exemption. 29 U.S.C. § 213(b)(12).

   (b) That plaintiff was exempt from the Act's coverage by the "outside salesman" exemption. 29 U.S.C. § 213(a)(1).

   (c) That plaintiff did not work for defendant over 40 hours a week and therefore was not entitled to overtime pay.

   (d) That there was not an employer-employee relationship between plaintiff and the three individual defendants.

   (e) That the Court was without jurisdiction to adjudicate the claim for vacation pay.

While this Court expressly overrules itself as to the "agricultural" exemption, the *Skipper* decision is sustainable on the remaining grounds.